**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY D. CALLOWAY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA,**<br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION NO. 26-CV-8206** |

## MEMORANDUM

**COSTELLO, J.** **NOVEMBER 24, 2026**

Plaintiff Charity D. Calloway initiated this *pro se* civil action alleging claims of employment discrimination against the Hospital of the University of Pennsylvania ("HUP"). Calloway also filed a motion to proceed *in forma pauperis*, as well as a motion for appointment of counsel. For the following reasons, the Court will grant Calloway leave to proceed *in forma pauperis* and dismiss the Complaint.

## I. FACTUAL ALLEGATIONS[1]

Calloway used the Court's form complaint for alleging employment discrimination, along with a supplement, to plead her claims. By checking the appropriate locations on the form, Calloway indicates that she brings claims of race and gender discrimination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17, as well as the Pennsylvania Human Relations Act ("PHRA"), and that she seeks injunctive relief and damages. (Compl. at 3, 5, 7.) Calloway also indicates on the form that she is an African American female. (*Id.* at 5.) The discriminatory conduct of which Calloway complains includes – "termination of

---

[1] The following allegations are taken from the Complaint (ECF No. 2) and attachments thereto. The Court adopts the pagination supplied by the CM/ECF docketing system to the filings in this case.

my employment," "failure to stop harassment," "unequal terms and conditions of my employment," "retaliation," and "other," which she explains as "employer collusion, blacklisting, tortious interference with employment." (*Id.* at 4-5.)

Calloway asserts that the discriminatory acts began on or about August 27, 2018, when she was hired by HUP as a Patient Engagement Coordinator in the Department of Radiation Oncology. (*Id.* at 8.) She describes this date as "the same date of [her] antagonistic mother's birthday." (*Id.*) Calloway contends she was hired "under false pretenses in the form of a job scam used to defraud [her] and to advance" the then supervisor. (*Id.*) Calloway asserts that she was wrongfully terminated on February 7, 2019, after she submitted written complaints to Human Resources about unfair treatment, "wrongful exclusions," and "discriminations," and after she notified them of departmental practices that were not in compliance with HIPAA. (*Id.*) She claims that she suffered discrimination on the basis of her race and gender, and was "isolated from team meetings and events,[2] sexually assaulted in an elevator by a male physician, defamed, and egregiously harassed [in] the workplace." (*Id.* at 8-9.) Calloway states that she was "the only African American on the team,"[3] and "was the only team member that encountered consistent delays, issues with system access, operational disruptions, and unsupportive staff from the start date." (*Id.* at 9.) Calloway represents that throughout her employment with HUP, she filed multiple workplace complaints regarding discrimination, harassment, and unfair treatment in the form of a hostile work environment before any adverse actions were taken against her.

---

[2] Calloway states that she was uninvited "to the major annual proton conference event that [she] significantly helped coordinate in the department." (Compl. at 13.)

[3] Calloway states that she suffered discrimination on the basis of race and that she wore her hair in a natural state. (Compl. at 13.)

(*Id.* at 12.) After her employment was terminated, she "file[d] complaints with government agencies" but they were "grossly mishandled." (*Id.*)

According to Calloway, after her employment ended in 2019, HUP "started breaching [her] intellectual property on their public social media Instagram account and with a specific online impersonator." (*Id.* at 9.) She contends she is unable to find employment in the healthcare field, and it took over two years to find employment in another industry. (*Id.*) Calloway claims that HUP "has a pattern of integrating personal themes into their adverse employment actions that amplify the harassment," and that she has been "blacklisted from healthcare" and targeted with "personalized digital stalking, cyberattacks at specific times," "intellectual property theft and computer intrusions, identity fraud and defamation schemes, scams, and undue delays." (*Id.*) Calloway contends that before the adverse employment actions, she had a successful career in healthcare; therefore, "the abrupt and uncharacteristic adverse outcomes in [her] personal and employment matters today are a direct consequence of" her termination in 2019, and HUP's "continued retaliation on [her] prospective employments and personal matters post-employment." (*Id.*)

Calloway also contends that HUP made a false report, resulting in her placement on "a government watchlist" and that an "associate professor" at HUP made a personal threat on her employment and life at the time she was hired "and undergoing the completion of an induced miscarriage" in violation of the Pregnant Workers Fairness Act. (*Id.* at 10.) Calloway asserts that she was "targeted with organized chaos that was too improbable to occur naturally," "harassed with cyber and technical attacks on her work computer, unexpected power outages, unauthorized alterations to [her] work, and malfunctioned apps or software" in an effort to discredit her. (*Id.*) On February 5, 2019, Calloway's "work email at [HUP] underwent a

cyberattack that caused a dramatic emergency evacuation of the department" and she was "suspiciously terminated the next day" because Calloway "was not cooperating." (*Id.*)

According to Calloway, HUP has performed "post-employment cyberattacks on [her] personal accounts" to defraud and defame her. (*Id.* at 11.) She further alleges a series of "catastrophic events" occurred in 2019 after her termination, which she attributes to HUP. (*Id.*) These include a home invasion and her personal Gmail account was hacked. (*Id.*) Calloway states that she reported sexual harassment "from University of Pennsylvania gym trainers . . . who are affiliated with the Military." (*Id.* at 11-12.) She claims she "was contacted by the Military member Sgt. Joshua Medina for recruitment into the Army, and . . . after a series of glitches with their fingerprinting machine, [she] suspected fraud and . . . did not enroll." (*Id.* at 12.) She contends that such "technical issues with fingerprinting background check reports" continued with subsequent employment applications, and her electronic devices were targeted with cyberattacks. (*Id.*) Calloway also claims HUP has interfered with employment opportunities since her termination by colluding with potential future employers. (*Id.* at 13.) She alleges that she was not hired by the Lewis Katz School of Medicine at Temple University in October 2019, because "an unexpected conflict with scheduling occurred with [her] reference from [HUP]" which harmed her job prospect. (*Id.*) She states that she was not selected for any of the "subsequent and copious job applications with Temple Health" which she attributes to the actions of HUP. (*Id.* at 13-14.) Calloway also asserts that HUP "sabotaged" other employment opportunities and that online platforms have "suddenly decreased the number of available jobs presented" to her since 2019. (*See id.* at 14-16.)

Calloway alleges other actions of post-termination retaliation, including "abus[ing] surveillance technologies," using "advanced methods to suppress [her] identity," and colluding

with the military to target her accounts. (*Id.* at 16-17.) She claims that the harassment has continued into other industries, such as restaurants where she was employed that hosted healthcare events "in reference" to HUP and "hiring new staff with the same or similar names as [her] immediate family members . . . as a way to mock [her] employment at [HUP]." (*Id.* at 18.) She alleges that AT&T "arbitrarily and unknowingly started the process to reverse a credit . . . causing a false past due balance on her account," she received targeted spam messages to her device, and received fraudulent charges to her bank account that "directly reference[d] the date of the email cyberattack at [HUP] in 2019." (*Id.*) Calloway concludes that the "cyberattacks" she continues to experience "are too large scale to be a coincidence according to statistical analys[is] and standard statistical analyses" such that HUP "continues to conspire in collusion against [her] employment." (*Id.* at 18-19.)

Calloway attached to her Complaint a Charge of Discrimination that indicates it was filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission.[4] (ECF No. 2-1 at 1-4.) It is dated July 24, 2026. (*Id.* at 3.) She also submitted a copy of the EEOC's Determination and Notice of Rights letter issued on July 27, 2026. (*Id.* at 5-9.)

## II. STANDARD OF REVIEW

Because Calloway appears to be incapable of paying the filing fees in this matter, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss it if, *inter alia*, it is frivolous or fails to state a claim. A complaint is subject to dismissal under §

[4] In the Charge, Calloway alleges, *inter alia*, that the undersigned "has the same initials as the assistant to [her] position at [HUP] and their chambers phone number has the same digits as [HUP's] illegal termination date." (*See* ECF No. 2-1 at 2.)

1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting

*Mala*, 704 F.3d at 245). An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245). Additionally, the Court must review the Complaint and dismiss the matter if it determines that subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III. DISCUSSION

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race and gender. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)); *see also Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (claims under the PHRA are interpreted coextensively with their federal counterparts). To bring suit under the PHRA, a plaintiff must file a complaint with the Pennsylvania Human Relations Commission "within 180 days of the alleged act of discrimination." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 Pa. C.S. § 959(h)). "To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Id.* at 165 (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *7 (3d Cir. Aug. 9, 2024) ("[W]hen a plaintiff files a discrimination complaint with both the EEOC and the PHRC, the EEOC limitations period increases from 180 to 300 days, but the PHRC limitations period is 180 days." (citing *Mandel*, 706 F.3d at 164-65)). PHRA and Title VII claims that are not filed within the prescribed time-period are time-barred. *See Mandel*, 706 F.3d at 164-65; *see also Watson v.*

*Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000) ("Watson's attempt to obtain relief under federal law from Kodak's alleged employment discrimination on the basis of race and age may proceed only if he filed his administrative charge of discrimination within 300 days of the unlawful employment actions he challenges."). Calloway states that her employment with HUP was terminated on February 7, 2019. However, she did not file her charge with the EEOC and the PHRC until July 24, 2026, (*see* ECF No. 2-1 at 3), more than seven years after her employment with HUP was terminated.

Furthermore, Calloway's allegations of post-termination retaliatory cyberattacks and collusion by HUP with future potential employers are factually frivolous and do not offer plausible support for her claims of continued retaliation, nor for equitable tolling.[5] Instead, such allegations offer an additional basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) as factually frivolous. *See, e.g., Aristilde Est. Ex. Rel. Aristilde v. Tradesman Int'l, LLC*, No. 26-2591, 2026 WL 1350816, at *2 (E.D. Pa. May 14, 2026) (dismissing Title VII claims under § 1915(e)(2)(B)(i) as factually frivolous); *Keo v. York Cnty. Jud. Ctr.*, No. 25-1233, 2026 WL

[5] While the time limitations set forth in Title VII are not jurisdictional and are subject to equitable tolling, that exception does not assist Calloway here. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999). "Equitable tolling is to 'applied sparingly.'" *Bello v. Cap. One Bank USA N.A.*, No. 23-2758, 2024 WL 2794418, at *3 (3d Cir. May 31, 2024) (*per curiam*) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Percival v. Zimmerman*, No. 24-2232, 2025 WL 1604502, at *3 (3d Cir. June 6, 2025) (*per curiam*) ("[E]quitable tolling is applied 'sparingly' and is not available where there is only a 'garden variety claim of excusable neglect.'" (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990))). Tolling is appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (*en banc*). Calloway does not assert that any of these grounds apply, and her fantastical allegations of post-termination retaliatory cyberstalking and collusion do not support a plausible basis for applying tolling.

1513028, at *1-2 (M.D. Pa. Jan. 12, 2026) (dismissing Title VII claims under § 1915(e)(2)(B)(i) as factually frivolous), *report and recommendation adopted*, 2026 WL 1511156 (M.D. Pa. May 29, 2026); *Hubert v. Dep't of Corr.*, No. 23-0563, 2024 WL 3442399, at *5 (D. Conn. July 17, 2024) (dismissing Title VII claims that were based on delusional allegations).

Because it is apparent from the face of the Complaint that Calloway's Title VII and PHRA claims are untimely, they will be dismissed on that basis. *See, e.g.*, *Wiggins v. Universal Prot. Serv., LLC*, No. 23-1054, 2023 WL 5014082, at *3 (3d Cir. Aug. 7, 2023) (*per curiam*) ("[W]e agree with the District Court that Wiggins's claims are time-barred as to his 2019 stint at Episcopal. Wiggins filed his EEOC complaint on January 5, 2021, more than 300 days after he was allegedly constructively discharged in September 2019."); *Valentin v. Manpower Grp. Sols.*, 792 F. App'x 208, 210 (3d Cir. 2019) (*per curiam*) ("Title VII requires a claimant in Pennsylvania to file a charge with the EEOC within 300 days of an unlawful employment practice. Absent the filing of such a charge, a claim for relief under federal law may not proceed." (citations omitted)).

Additionally, because the Court has dismissed Calloway's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, to the extent Calloway seeks to present any. Further, the Court lacks diversity jurisdiction over Calloway's state law claims, to the extent alleged. Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where she is

domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011). For diversity purposes, a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c).

It is the plaintiff's burden to establish diversity of citizenship. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met). Calloway has not met this burden. She provides a Pennsylvania address for herself and HUP, and both appear to be citizens of Pennsylvania. (*See* Compl. at 4.) Accordingly, Calloway has not sufficiently alleged diversity jurisdiction. All state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Calloway may refile her state law claims in state court, where federal jurisdiction will not be an issue, if she chooses to do so.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Calloway leave to proceed *in forma pauperis* and dismiss her Title VII and related PHRA claims with prejudice pursuant to 2 U.S.C. § 1915(e)(ii)(B)(i) and (ii). Any other state law claims Calloway seeks to present will be dismissed without prejudice for lack of subject matter jurisdiction. Leave to amend will not be given because, under the circumstances of this case, amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (requiring amendment in a *pro se* case unless it would be inequitable or futile). Additionally, Calloway's request for appointment of

[6] The Court expresses no opinion on the merit of any such claims.

counsel (ECF No. 3) will be denied as moot.

An appropriate Order follows, which dismisses this case. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**MARY KAY COSTELLO, J.**